**NOBLE ROMAN'S, INC., Appellant–
Defendant,**

v.

**Willis W. WARD and Mary Jane
Ward, Appellees–Plaintiffs.**

No. 49A04–0107–CV–315.

Court of Appeals of Indiana.

Jan. 14, 2002.

Jeffrey R. Gaither, Michael A. Dorelli, Leagre Chandler & Millard, Indianapolis, IN, for Appellant.

R. Brock Jordan, Rubin & Levin, Indianapolis, IN, for Appellees.

## OPINION

BAKER, Judge.

Appellant-defendant, Noble Roman's, Inc. (Noble Roman's) appeals the trial court's grant of summary judgment entered in favor of the appellees-plaintiffs Willis W. and Mary Jane Ward (collectively, the Wards), that ultimately resulted in a damage award of $46,252.98 in the Wards' favor. Specifically, Noble Roman's maintains that the trial court should have granted its cross-motion for summary judgment because the designated evidence established that it was not obligated to guarantee the debts of a third party pursuant to an assignment or amendment to a lease agreement that had been executed.

In the alternative, Noble Roman's argues that summary judgment should not have been granted to the Wards because the guaranty and other documents executed by the parties were too ambiguous to conclude, as a matter of law, that the guaranty applied to claims for rent under an amendment to the lease agreement that was separate from the original lease. In essence, Noble Roman's argues that there were numerous genuine issues of material fact regarding the parties' intentions that precluded summary judgment.

The Wards cross-appeal, arguing that the trial court erred in refusing to award them damages for repairs to the roof of the building or the parking lot that resulted from Noble Roman's alleged negligence in failing to maintain the property and its breach of the lease agreement. The Wards further claim that they should have received an amount for prejudgment interest on their damage award.

## FACTS

The Wards are the owners of certain real estate and improvements to the property in Troy, Ohio. On April 28, 1981, the Wards entered into a land and building lease (the lease) with Buckeye Pizza Corporation (Buckeye), a Nebraska corporation that desired to lease the Wards' property for the purpose of operating a pizza parlor.

On February 17, 1983, Buckeye and Ohio Pizza Ltd. (Ohio Ltd.), a Nebraska limited partnership of which Buckeye was the general partner, entered into a con-

tract entitled, "Assignment of Lease and Acceptance of Assignment," where Buckeye assigned all of its right, title and interest in the lease and the real estate to Ohio Ltd. Ohio Ltd. eventually began experiencing difficulties in meeting its rental obligations to the Wards. Thus, Peter D. Knott, Buckeye's president, began discussions with Paul Mobley, who was both president of NR Dayton, and chairman of Noble Roman's, regarding the sale of fifteen restaurants that Ohio Ltd. owned.[1]

Knott maintained that at one point during the negotiations, Mobley represented that NR Dayton would assume the rights and obligations of Ohio Ltd. under the lease, and that Noble Roman's would guarantee NR Dayton's performance under it. Knott further maintained that Mobley made it clear that the sale, assumption of the lease, and guaranty were conditioned upon certain amendments being made to the underlying lease.

Following the negotiations, Knott sent correspondence to the Wards on November 28, 1984, informing them of the proposed assignment of the lease to NR Dayton. That letter also informed the Wards of Noble Roman's financial and organizational information for the Wards' consideration. Knott included unexecuted copies of an "Amendment of Lease" (Amendment), providing for an extension of the option to renew the original lease agreement and a "Consent to Assignment" under the terms of which the Wards would give their consent of the Lease Assignment to NR Dayton. The amendment to the lease agreement and the consent to the assignment made specific reference to the guarantee of Noble Roman's as consideration supporting the Ward's execution of these documents.

On February 6, 1985, Ohio Ltd., NR Dayton, and Noble Roman's entered into a written contract for the purchase of Ohio Ltd.'s pizza business, and established a closing date of March 18, 1985. Consistent with the agreement, Knott submitted additional correspondence to the Wards on February 8, 1985, where he again informed them that Noble Roman's would guarantee the performance of NR Dayton, conditioned upon the Wards' execution of the "Consent to Assignment" and "Amendment of Lease."

At the closing, the parties entered into an agreement entitled "Assignment, Assumption Undertaking and Consent to Assignment" (Assignment). Four separate documents were included within that agreement, all of which were executed by the parties. Knott signed the Assignment on behalf of both Ohio Ltd. and Buckeye, pursuant to which these entities assigned their interests in the original lease to NR Dayton. Mobley executed the Assumption Undertaking on behalf of NR Dayton, under the terms of which NR Dayton accepted the Assignment and agreed to hold Ohio Ltd., Buckeye and certain individuals harmless from liability. Mobley further executed, on behalf of Noble Roman's, the Guaranty, which provided that Noble Roman's would guarantee NR Dayton's performance of all obligations assumed under the Assumption Undertaking. The Wards executed the Consent to Assignment where they granted their consent to the Assignment of the original lease agreement to NR Dayton. Consistent with the previous representations of both Mobley and Knott, as well as the understanding of the Wards, the Consent to Assignment specifically provided that the Wards gave their consent in consideration of Noble Roman's guarantee of performance.

---

1. Noble Roman's is the parent corporation of NR Dayton.

Also at the closing, NR Dayton and the Wards executed the Amendment. That document modified the original agreement to the extent that NR Dayton was granted an option to renew the lease through April 30, 2000. The Amendment specifically referred to the Assignment, provided that Noble Roman's, as the parent corporation of NR Dayton, guaranteed NR Dayton's obligations under the Lease, and stated that the Wards were relying upon the reputation and financial strength of Noble Roman's in entering into the agreement.

The Amendment further provided that except for such specific modifications set forth therein, the "lease is in all respects ratified, approved and confirmed, and the terms covenants, and conditions thereof shall remain in full force and effect." Appellant's App. at 39. A section of the Lease provided that monthly rental amounts would be paid to the Wards. The lessee also covenanted to repair and maintain the premises, and to insure the premises against destruction.

Sometime in 1989, the Wards began receiving rental payment checks from an entity designated as Al–Nan Management, Inc. (Al–Nan), purportedly an agent of NR Dayton. The Wards inquired of Noble Roman's regarding the status of Al–Nan, whereupon Noble Roman's representatives informed them that NR Dayton remained the lessee of the premises and that Al–Nan was merely managing the restaurant business. Thus, the Wards continued to believe that Al–Nan was merely acting as the agent of NR Dayton in paying the rent and performing the remaining obligations under the Lease.

NR Dayton subsequently defaulted on its obligations under the lease by failing to pay the rent when it became due. It also allegedly failed to maintain the premises and provide the required insurance. Apparently, NR Dayton, or its agent Al–Nan, abandoned the real estate in June 1998, and no monthly rental was paid to the Wards after that date. Thus, the Wards commenced an action against NR Dayton and Noble Roman's on April 4, 2000, alleging that NR Dayton had defaulted under the Lease as well as the Amendment that had been executed. The Wards contended that Noble Roman's was liable under the Guaranty that had been executed by the parties. Appellant's App. at 12–41. As a result, the Wards requested damages in the amount of $58,583.60 plus prejudgment interest at a rate of 8% per annum from April 22, 1999.

On October 24, 2000, the Wards moved for summary judgment, claiming that the Guaranty was unambiguous, and that based upon the undisputed facts, they were entitled to judgment as a matter of law with respect to Noble Roman's obligations under that instrument. Noble Roman's opposed the motion and filed a cross-motion for summary judgment. It also contended that the Guaranty was unambiguous with respect to its obligations under that instrument, in that it served only as an indemnification agreement. In the alternative, Noble Roman's argued that the Guaranty and other documents executed by the parties were ambiguous and, therefore, the Wards' request for summary judgment should be denied in light of the numerous genuine issues of material fact. Appellant's brief at 2.

Following a hearing on the parties' summary judgment claims, the trial court entered its order on April 17, 2001. Specifically, summary judgment was granted in favor of the Wards and against both NR Dayton and Noble Roman's with respect to the issue of liability. The trial court then set the matter for a hearing on damages. At that hearing, Noble Roman's and NR Dayton stipulated to an amount of $43,055.98 in the event that the Wards

were to be awarded their claim damages. On June 26, 2001, the trial court held that Noble Roman's and NR Dayton were liable for all of the stipulated damages, plus the costs associated with repairing broken windows on the premises. However, the trial court declined to hold them liable for the cost of repairing the roof and parking lot that amounted to $13,816. As a result, a judgment award was entered for the Wards in the amount of $46,252.98. The trial court declined the Wards' request for prejudgment interest. Noble Roman's appeals and the Wards cross-appeal, challenging the denial of their request for prejudgment interest and the refusal of the trial court to award damages for the roof and parking lot repairs.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing summary judgment, we apply the same standard as the trial court. *USA Life One Ins. Co. v. Nuckolls,* 682 N.E.2d 534, 537 (Ind.1997). This court does not weigh the evidence designated by the parties and we liberally construe the evidence in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate only if the pleadings and the evidence demonstrate both the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Peoples Bank & Trust v. Price,* 714 N.E.2d 712, 715 (Ind. Ct.App.1999), *trans. denied.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, it must be affirmed. *Indianapolis Pub. Hous. Agency v. Aegean Constr. Servs., Inc.,* 755 N.E.2d 237, 239 (Ind.Ct. App.2001).

We also note that the purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *United Farm Bureau v. Schult,* 602 N.E.2d 173, 174 (Ind.Ct.App. 1992). Construction of a written contract is generally a question of law for which summary judgment is particularly appropriate. *Kordick v. Merchants Nat'l Bank & Trust Co.,* 496 N.E.2d 119, 125 (Ind.Ct. App.1986). In determining the parties' intent regarding a contractual agreement, this court has observed that:

> The intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it. The cardinal rule of contract interpretation is to ascertain the intention of the parties from their expression of it. The court does not examine the hidden intentions secreted in the heart of a person but, rather, examines the final expression found in conduct. The intention of the parties, however, is to be determined in light of the surrounding circumstances which existed at the time the contract was made.

*Real Estate Support Serv., Inc. v. Nauman,* 644 N.E.2d 907, 910–11 (Ind.Ct.App. 1994), *trans. denied* (citations omitted).

### II. Liability Under Guaranty

Noble Roman's contends that the trial court improperly entered summary judgment on the Wards' claims because the instruments executed by the parties establish, as a matter of law, that Noble Roman's liability under the Guaranty is limited to paying claims that might be brought against the original lessees and hold them harmless if litigation was initiated against them. In essence, Noble Roman's asserts that the Wards' claim for rent allegedly due under the Amendment did not fall within the purview of the Guaranty. Thus, no liability may attach.

In resolving this issue, we initially observe that the interpretation of a

guaranty is governed by the same rules applicable to other contracts. *Loudermilk v. Casey*, 441 N.E.2d 1379, 1383 (Ind.Ct. App.1982). In construing a guaranty, a court must give effect to the intentions of the parties, which are to be ascertained from the language of the contract in light of the surrounding circumstances. *Id.* Generally, the nature and extent of a guarantor's liability depends upon the terms of his contract, and a guarantor cannot be made liable beyond the terms of the guaranty. *Fortmeyer v. Summit Bank*, 565 N.E.2d 1118, 1122 (Ind.Ct.App.1991). However, the terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms. *Loudermilk*, 441 N.E.2d at 1383.

 We also note that writings executed at the same time and relating to the same transaction or subject matter will be construed together in determining the intent underlying the contracts. *Beradi v. Hardware Wholesalers, Inc.*, 625 N.E.2d 1259, 1261 (Ind.Ct.App.1993), *trans. denied.* Put another way, the guaranty and any other contemporaneous written agreements it incorporates must be construed together in order to determine the parties' intentions. *Loudermilk*, 441 N.E.2d at 1383.

Turning to the circumstances presented here, we first set forth the provisions of the Guaranty executed by Noble Roman's:

COMES NOW NOBLE ROMAN'S INC., and hereby unconditionally guarantees the performance by N.R. DAYTON MALL, INC., *of all its obligations under the above and foregoing Assumption Undertaking.*

Appellant's App. at 21(emphasis supplied). Inasmuch as the above references the Assumption Undertaking, we recite the relevant provisions of that instrument:

FOR AND IN CONSIDERATION of the above and foregoing Assignment and the consideration provided for in the Purchase Agreement therein referred to, N.R. Dayton Mall, INC., an Indiana corporation, *hereby accepts said Assignment* and, from and after the date hereof, assumes, agrees to pay and forever agrees to hold BUCKEYE PIZZA CORPORATION, a Nebraska corporation, OHIO PIZZA LIMITED, a Nebraska limited partnership, and to the extent any such individual has any personal liability under [the] Lease, T. BLAKE WHITNEY, PETER D. KNOTT, PHILIP L. ULLERICH, RICHARD R. MILES and each of them harmless from any and all liabilities incurred from and after the date hereof under the Lease and all other agreements described on Exhibit "A," attached to said Assignment and further covenants to defend said parties against said liabilities and to reimburse said parties for any expenses incurred by them, or any of them, in the defending against said liability, including but not limited to reasonable attorney fees.

Appellant's App. at 19 (emphasis supplied).

The Assignment, also noted above provides in part that:

FOR VALUABLE CONSIDERATION received, BUCKEYE PIZZA CORP., a Nebraska corporation, and OHIO PIZZA LIMITED, a limited Partnership ("Assignors"), *hereby assign to N.R. DAYTON MALL, INC., an Indiana corporation ("Assignee"), all of the Assignors' right, title and interest as lessee in and to the lease* described on Exhibit "A" attached hereto together with all leasehold improvements relating thereto (collectively the "Lease").

Appellant's App. at 15 (emphasis supplied).

In construing these instruments, Noble Roman's takes the position that the lan-

guage set forth in the "Assumption Undertaking" operates only as an indemnification agreement, whereby NR Dayton agreed to hold Buckeye Pizza, Ohio Pizza and certain individuals harmless from liability incurred by them under the Lease. Thus, Noble Roman's maintains that a reference to the Assignment contained only in the recitation of consideration does not incorporate all the obligations delineated by the Assignment into the "clear and unambiguous indemnification provision." Appellant's brief at 13. Moreover, Noble Roman's points out that nowhere in the Guaranty is it specifically stated that NR Dayton's performance is "guaranteed" under the Assignment or Lease. Appellant's brief at 13. Therefore, it urges that the trial court effectively altered the agreements by improperly adding terms that the Wards should be entitled to recover upon their claim for rent that was allegedly owed to them in 1999 and 2000. That is, Noble Roman's contends that such obligations were derived from the separately executed Amendment and those amounts could not have fallen within the scope of the Guaranty. Appellant's brief at 12–14.

We are compelled to reject this argument, inasmuch as Noble Roman's interpretation essentially would mandate a disregard of the cross-reference to the Assumption Undertaking and the other remaining documents. It is undisputed that those documents were executed contemporaneously as part of the same transaction. In particular, Noble Roman's unequivocally acknowledges that the "Assignment, the Assumption Undertaking, the Guarantee and the Consent to Assignment were all executed·by the parties as a single document." Appellant's brief at 15–16, 20. The designated evidence is also without dispute that each document was "part and parcel" of the overall transfer of the leasehold interests held by Buckeye and Ohio Ltd. to NR

Dayton. The Consent to Assignment expressly provides that the Wards agreed to the assignment of the Lease to NR Dayton in consideration of: (i) the acceptance of the assignment by NR Dayton; (ii) the Guaranty of Noble Roman's; and (iii) the understanding that Buckeye and Ohio Ltd. remain liable for all the lessee's obligations under the Lease.

We find it particularly noteworthy that NR Dayton's assumption of additional duties under the Lease was accepted by Mobley. It was also Mobley who, on the same day and as part of the same transaction, executed the Guaranty on Noble Roman's behalf. Mobley signed the "Assumption Undertaking" under the terms of which NR Dayton both assumed the Lease and agreed to indemnify Buckeye, Ohio Ltd. and others. During that same closing, Mobley executed the Amendment of Lease to the original lease agreement, which specifically references both the Assignment and Guaranty. As set forth above, those documents provide the consideration supporting the execution of the Amendment of Lease. Appellant's App. at 37–40. Again, the Amendment was undertaken contemporaneously with the execution of the Guaranty, and it may not be said that it was some later incurred obligation.

Under these circumstances, we cannot say that the trial court's reference to, and interpretation of, the Assignment, Assumption Undertaking, Consent to Assignment and Amendment, in order to ascertain the scope of the Guaranty, was erroneous. The Assumption Undertaking provides that NR Dayton agreed to accept the Assignment of the Lease and further agreed to indemnify Buckeye, Ohio Ltd. and the other individuals. Thus, it was reasonable for the trial court to conclude that Noble Roman's was guaranteeing the performance of NR

Dayton under the Lease obligations. As a result, the trial court did not err in granting the Wards' motion for summary judgment.

### III. The Wards' Cross–Appeal

#### A. Repair of Roof and Parking Lot

██ The Wards allege that the damage award was inadequate. Specifically, they argue that the trial court erred in refusing to award them damages for the cost of repairing the parking lot and roof, even though they presented evidence consisting of photographs and repair estimates of contractors at the hearing.

 We note that a factfinder may not award damages on the mere basis of conjecture or speculation. *Marathon Oil Co. v. Collins*, 744 N.E.2d 474, 482 (Ind.Ct. App.2001). The burden of proof with respect to damages is with the plaintiff. *Gigax v. Boone Village Ltd. P'ship*, 656 N.E.2d 854, 856 (Ind.Ct.App.1995). In actions for breach of contract, damages must be proven with reasonable certainty. *Ticor Title Ins. Co. of Cal. v. Graham*, 576 N.E.2d 1332, 1336 (Ind.Ct.App.1991), *trans. denied.*

 We also observe that this court reviews an award of damages under an abuse of discretion standard. We will uphold the factfinder's decision with respect to damages as long as the record supports the judgment. *See Scott–Reitz Ltd. v. Rein Warsaw Associates*, 658 N.E.2d 98, 105 (Ind.Ct.App.1995). In essence, the Wards are appealing from a negative judgment. Thus, they must demonstrate that the award is clearly erroneous or contrary to law in order to have it set aside. *See Carpetland U.S.A. v. Payne*, 536 N.E.2d 306, 310 (Ind.Ct.App.1989).

Here, we note that while the Wards presented evidence at the damages hearing regarding the contractor's estimates as to roof and parking lot repairs, nothing was offered demonstrating that any alleged damage occurring to those areas was anything but the result of ordinary wear and tear or exposure to the elements. Although the lease may have required NR Dayton to maintain the building or parking lot, we glean from the record that the Wards did not satisfy their burden in proving that NR Dayton breached that duty. As a result, we cannot say that the trial court's decision to deny the Wards' claim for these damages amounted to an abuse of discretion

#### B. Prejudgment Interest

██ Finally, the Wards assert that the trial court's denial of their request for prejudgment interest was erroneous. Specifically, they maintain entitlement to prejudgment interest because the amount of the damages was ascertainable and the trial court did not have to exercise any discretion in computing that award.

██ In addressing this claim, we note that an award of prejudgment interest in a contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable. *J.S. Sweet Co. v. White County Bridge Com'n*, 714 N.E.2d 219, 225 (Ind.Ct.App.1999). The test for determining whether an award of prejudgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time. *Stephens v. Parkview Hosp., Inc.*, 745 N.E.2d 262, 266 (Ind.Ct.App.2001). The award is considered proper when the trier of fact need not exercise its judgment to assess the amount of damages. *Sand Creek Country Club Ltd. v. CSO Architects, Inc.*, 582 N.E.2d 872, 876 (Ind.Ct. App.1991). Finally, an award of prejudgment interest is generally not considered a matter of discretion. *Id.*

Here, the undisputed evidence shows that Noble Roman's stipulated to the amounts of the majority of the damages that the Wards had requested. Thus, it is apparent that the trial court was not required to exercise any discretion in determining that stipulated amount. Moreover, the amount due for rent was readily ascertainable from the terms set forth in the Lease. As a result, the Wards were entitled to prejudgment interest with respect to the amount of the stipulated damages.

## CONCLUSION

In light of the disposition of the issues set forth above, we conclude that the trial court properly entered summary judgment for the Wards as to Noble Romans' liability under the Guaranty. Additionally, we note that the trial court properly denied the Wards' request for damages regarding the repair of the parking lot and roof. Finally, we conclude that the trial court is required to award prejudgment interest for the amount that Noble Roman's had stipulated at the damages hearing.

Judgment affirmed and remanded to the trial court with instructions that an additional award for prejudgment interest be entered in the Wards' favor on the damage amount at a rate of 8% per annum from April 29, 1999.

RILEY, J., and MATTINGLY MAY, J., concur.