# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3327

_____

Fike Corporation,

      Appellant,

    v.

Great Lakes Chemical Corporation,

      Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Western District of Missouri.
\*
\*
\*

_____

Submitted: April 17, 2003

Filed: June 11, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

Fike Corporation (Fike) appeals from the district court's[1] grant of summary judgment in favor of Great Lakes Chemical Corporation (Great Lakes) in this dispute arising out of an agreement for the supply of chemicals to be used in fire suppression systems. We affirm.

---

[1]The Honorable Scott W. Wright, United States District Judge for the Western District of Missouri.

## I. BACKGROUND

Fike designs, manufactures, and installs fire suppression systems. Great Lakes manufactures specialty chemical solutions, including a fire retardant known as 1,1,1,2,3,3,3-Heptafluoropropane, or HFC-227ea, its generic designation. Although both Great Lakes and E.I. du Pont De Nemours and Company (DuPont) apparently hold patents for HFC-227ea originating in 1992,[2] DuPont did not begin manufacturing the chemical until 2000. Thus, Great Lakes was the sole manufacturer and supplier of HFC-227ea from 1992 until 2000.

Great Lakes markets HFC-227ea under the brand name "FM-200™" and has submitted affidavits supporting its contention that, because FM-200 was the only HFC-227ea product on the market for so long, people in the fire suppression industry now frequently use the term FM-200 as a generic moniker for all HFC-227ea marketed.[3] Although Fike disputes this fact, it has not provided any affidavits or exhibits to refute it.

In the early 1990s, Fike developed fire suppression systems using Great Lakes's FM-200. Great Lakes supplied Fike with between 20,000 and 50,000 pounds of the chemical at no cost to be used in system testing and also provided valuable technical

---

[2]The record reveals that, after both Great Lakes and DuPont filed for and received patents for HFC-227ea in 1992, Great Lakes contested the issuance of DuPont's patent. The patent office conceded that it had erroneously issued two patents for the same chemical, but did not rescind or withdraw either patent. DuPont and Great Lakes resolved their ensuing dispute by entering into a cross-licensing agreement that required Great Lakes to pay royalties to DuPont until such time as DuPont should decide to begin manufacturing and selling its own HFC-227ea product.

[3]Great Lakes cites testimony by a Fike witness comparing this to the use of "Kleenex™" in reference to all brands of facial tissue.

assistance. Fike began selling fire suppression systems using FM-200 in 1993 and entered a supply agreement with Great Lakes in order to secure a source of the chemical for all of its customers, both in the United States[4] and in other countries. The agreement provided that Fike would purchase, and Great Lakes would supply, Fike's requirements for FM-200, and also that Fike would use "its reasonable best efforts to promote the sale and use of FM-200™."

Fike purchased FM-200 pursuant to the agreement from 1993 until October 2001. During that time Fike promoted FM-200 by providing brochures and literature to its distributors, holding seminars, and using most of its trade-show booth space to showcase the product. Great Lakes maintained production capacity in its manufacturing plant and continued to secure the raw materials needed to meet Fike's requirements. Then, in 2000, DuPont announced that it was entering the market with its own brand of HFC-227ea known as "FE-227."

DuPont contacted Fike about distributing FE-227, and the two companies eventually executed a "Letter of Intent" in November of 2000 in which Fike committed to purchasing 100% of its requirements for HFC-227ea from DuPont for the markets where DuPont has applicable patent rights. Fike and Great Lakes disagreed over whether their agreement precluded Fike's proposed arrangement with DuPont. According to Great Lakes, both parties originally understood the agreement's use of "FM-200™" to mean HFC-227ea; that is, Fike was required to purchase all of its requirements for HFC-227ea from Great Lakes. Fike, however, adopted a new interpretation in early 2000, arguing that the agreement governed only Fike's requirements for Great Lakes's brand of HFC-227ea, FM-200. Fike filed this lawsuit in January 2001, seeking a declaratory judgment in support of its position.

---

[4]Approximately seventy-five percent of Fike's business is done in the United States.

Then in April 2001, while the litigation was pending, Fike paid for a shipment of DuPont's FE-227 and continued to place new orders thereafter. As Fike's orders for FE-227 increased, its orders for FM-200 declined. Fike began splitting its trade-show booth space between the two products and even made a banner informing distributors that FE-227 was identical to the more-familiar FM-200. It is also undisputed that Fike gave DuPont a list of the distributors through whom Fike had previously sold FM-200 exclusively.

Based on these facts, Great Lakes filed a counterclaim alleging that Fike breached its contractual obligation to purchase FM-200 from Great Lakes and to use its reasonable best efforts to promote FM-200, and claiming damages. But in July 2001, Great Lakes mooted Fike's claims for declaratory relief by electing to terminate the agreement pursuant to the termination provisions in the contract. However, Great Lakes's counterclaim for damages remained at issue and the district court granted summary judgment for Great Lakes and awarded lost profits and overhead damages in excess of $3 million. Fike appeals.

## II.    DISCUSSION

We are presented with two issues: first, whether Fike breached its agreement with Great Lakes, and second, whether the district court properly awarded damages at the summary judgment stage. We review the district court's grant of summary judgment de novo, and we affirm when, viewing the facts in the light most favorable to the non-moving party, we find no genuine issue of material fact to prevent us from deciding the case as a matter of law. Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 666 (8th Cir. 2003).

## A. Breach of Contract

First, the district court found that Fike had breached the provision of the contract that required Fike to "use its reasonable best efforts to promote the sale and use of FM-200™ in . . . Patent Countries."  And indeed, the undisputed facts in the case support the court's conclusion.  Fike began selling FE-227, a product that directly competed with FM-200, to its customers who had been using FM-200.  It devoted fewer resources to the promotion of FM-200 in order to accelerate promotion of FE-227.  And most importantly, it explicitly advertised that FE-227 could be used in place of FM-200.  These facts clearly demonstrate a breach of Fike's contractual duty to use its best efforts in promoting FM-200.

Fike attempts to avoid summary judgment on this issue by arguing that the United States is not a "Patent Country" under the agreement and that, therefore, the best efforts provision does not apply to Fike's activities in the United States.  This contention is without merit.  The agreement provides that a Patent Country is "a country . . . in which Seller holds a Patent which has been issued or allowed, or in which Seller has a Patent pending," and then subsequently refers to a list of Patent Countries attached to the agreement as "Exhibit A."  It is undisputed that Great Lakes holds a United States patent; indeed, the definition of Patent Country refers to it by number.  But for some reason, the United States is omitted from Exhibit A,[5] and Fike cites this omission as conclusive proof that the United States is not a Patent Country.  Fike proposes an interpretation of the contract that ignores the actual language of the definition of Patent Country and the agreement's numerous other references to the

_____

[5]Great Lakes's witnesses testified that Exhibit A was a list of foreign patents subject to change, and Fike has not submitted evidence to the contrary.  Nowhere does the agreement state that Exhibit A is an exclusive list of Patent Countries.

United States as a Patent Country.[6]   Under Indiana law,[7] we "must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting."  Peoples Bank & Trust Co. v. Price, 714 N.E.2d 712, 717 (Ind. Ct. App. 1999).  We hold that the United States is a Patent Country under the agreement and, therefore, that Fike breached the agreement by failing to use its best efforts to promote FM-200 in the United States.

Next, the district court found that Fike breached the agreement by filling its requirements for HFC-227ea with DuPont's FE-227 instead of with Great Lakes's FM-200.  Fike contends that its agreement with Great Lakes covered only Fike's requirements for the FM-200 brand and not for HFC-227ea in general.  Thus, Fike argues, it was not precluded from purchasing FE-227 from DuPont.

On this point, Fike appears to have the actual language of the agreement on its side.  Several provisions refer to "FM-200™," and the contract provides that FM-200 "shall mean 1,1,1,2,3,3,3-Heptafluoropropane [or HFC-227ea] sold under [Great Lakes]'s FM-200™ trademark."  Nevertheless, Great Lakes argues that the parties used the brand name FM-200 because, at the time of the agreement and for ten years thereafter, it was the only brand of HFC-227ea on the market and was commonly used interchangeably with the generic name.  The record reveals no genuine issue of fact on this point.

But there is an even more glaring flaw in Fike's proposed interpretation.  If the agreement covered only FM-200 and not HFC-227ea in general, then Fike was not

_____

[6]For example, the contract identifies the United States patent number, refers repeatedly to Great Lakes's "United States Patent," and refers specifically to "products which are resold in a Patent Country other than the United States."

[7]The contract provides that it "shall be construed and enforced in accordance with the substantive laws of Indiana."

obligated to purchase anything from Great Lakes. It could buy as much or as little FM-200 as it wanted.[8] Indiana courts have held that such an arrangement, "under which the buyer agrees to purchase and the seller agrees to supply whatever quantity of goods the buyer chooses to purchase" is an illusory and unenforceable indefinite quantities contract. Indiana-American Water Co. v. Town of Seelyville, 698 N.E.2d 1255, 1259-60 (Ind. Ct. App. 1998). On the other hand, a valid requirements contract may designate a product by brand name and still preclude the buyer from purchasing similar products of a different brand. Pepsi-Cola Co. v. Steak 'N Shake, Inc., 981 F. Supp. 1149, 1158-59 (S.D. Ind. 1997) (requirements contract for Pepsi products prohibited buyer from purchasing other-branded soft drinks). We hold that Fike's agreement with Great Lakes was a valid requirements contract that obligated Fike to purchase all of its requirements for HFC-227ea from Great Lakes. It is undisputed that Fike purchased FE-227 from DuPont. We find that Fike breached the agreement and we affirm the district court's grant of summary judgment for Great Lakes.

## B. Damages

Fike challenges the award of over $3 million in lost profits and additional overhead damages by arguing, first, that Great Lakes failed to prove damages with sufficient certainty and, second, that Fike did not have an adequate opportunity to conduct discovery on the issue of damages. We reject both contentions.

Under Indiana law, damages must be proven with reasonable certainty in actions for breach of contract. Noble Roman's, Inc. v. Ward, 760 N.E.2d 1132, 1140 (Ind. Ct. App. 2002). We review a judge's award of damages for abuse of discretion

---

[8]Fike asserts for the first time in this appeal that its requirements for FM-200 were determined by customer demand for the specific brand. We reject this argument. Fike's own witnesses testified to the contrary, and it is clear from the record that customers had no preference for one brand of HFC-227ea over the other, as they are chemically indistinguishable.

and uphold the award as long as it is supported by the record.  Id.  We find that Great Lakes has submitted evidence sufficient to support the district court's award in this case and that Fike has failed to refute that evidence.  We also find that any deficiencies in the discovery that Fike conducted on the damages issue are the result of its own failure to utilize the available procedures.  See Lundeen v. Cordner, 354 F.2d 401, 409 (8th Cir. 1966) (holding that failure to make use of a discovery procedure is destructive of the contentions that the party opposing summary judgment did not have sufficient opportunity to test the veracity of facts stated in the supporting affidavits).  Fike declined opportunities for a supplemental deposition of Great Lakes's key damages witness before summary judgment, and failed to subsequently notice a supplemental deposition or to contact Great Lakes to schedule a continued deposition, even after receiving Great Lakes's documents in support of its damages claim.  Fike has not demonstrated a genuine issue of fact with respect to damages.  Accordingly, we affirm the order of the district court awarding $2,808,740 in lost profits, $222,405 in additional overhead costs, and prejudgment interest pursuant to Indiana Code section 24-4.6-1-103.

## III.   CONCLUSION

For the reasons stated in this opinion, we affirm the judgment of the district court in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.