**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 27 2012, 9:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**KEVIN R. PATMORE**
Patmore Law Office
Santa Claus, Indiana

ATTORNEYS FOR APPELLEES:

**DAVID L. JONES**
**ROBERT W. ROCK**
Jones – Wallace, LLC
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THE CARL KAETZEL TRUST U/T/D/ December 10, 1977, and THE ROBERTA KAETZEL TRUST U/T/D December 10, 1977, and CARL KAETZEL, ROBERTA KAETZEL, TIMOTHY KAETZEL and JILL KAETZEL, | ) ) ) ) ) ) ) ) ) | |
| Appellants-Plaintiffs, | ) ) | No. 74A01-1201-PL-36 |
| vs. | ) ) ) | |
| JON MARC KAETZEL and BEVERLY K. KAETZEL, | ) ) ) ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE SPENCER CIRCUIT COURT
The Honorable David O. Kelley, Special Judge
Cause No. 74C01-0609-PL-425

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellants-plaintiffs, the Carl Kaetzel Trust and the Roberta Kaetzel Trust, Carl, Roberta, Timothy, and Jill Kaetzel (collectively, the plaintiffs), appeal the trial court's judgment entered in favor of appellees-defendants, Jon and Beverly Kaetzel (collectively, the Kaetzels), on their claims for rescission of a deed and constructive fraud that related to certain real property.

Specifically, the plaintiffs claim that the trial court erred when it entered judgment for the Kaetzels on their claim for rescission and constructive fraud. The Kaetzels cross-appeal, claiming that the trial court erred when it did not enter specific findings of fact and conclusions of law as to other issues in the case, namely with regard to their counterclaim that they brought against Timothy Kaetzel regarding his nonpayment of property taxes and insurance premiums on the property. The Kaetzels contend that Timothy's failure to pay should have extinguished his life estate on the property.

We conclude that the trial court properly determined, pursuant to remand from this court, that the plaintiffs were not entitled to the remedy of rescission and that judgment was properly entered for the Kaetzels with regard to the other counts that were set forth in the complaint. However, we reject the Kaetzels' claim on cross-appeal that Timothy, as the holder of a life estate in the property, should have been ejected from the premises in these circumstances.

2

## FACTS

Carl and Roberta have been married for sixty-one years and have three adult children: Jon, Timothy, and Jill. In 1977, Carl and Roberta executed identical trusts, each conveying their undivided one-half interest in 280 acres of real estate to the "Carl Kaetzel and Roberta Kaetzel Family Trusts" (collectively, the trusts). The property consisted of the "Home Place," 120 acres; the Schmidt Farm, forty acres; the Heilman Farm, eighty acres; and the Byers Farm, forty acres (collectively the "property"). Tr. p. 6, 10, 17. The Home Place contains two residences, one inhabited by Carl and Roberta, and another by Timothy. The Home Place also consists of several outbuildings, lakes, gardens, lawns, and cropland. The trusts named Carl, Roberta, and Jon as Trustees.

In 1987, the trusts were amended and specifically granted Jon an option to purchase the Home Place and the Heilman Farm for $150,000, or for $100,000 if coal had been removed from the land while Carl and Roberta were still living. Carl and Roberta wanted their farm to remain in the Kaetzel family. From the creation of the trusts until the conveyance that is at issue here, Carl and Roberta maintained complete control over all of their personal and real property, including the trusts.

Sometime in 2003, Carl purchased a Case 1570 tractor, which he intended to use in assisting with the farming operations. When Carl developed some health problems, Jon continued to use the tractor. However, Carl demanded the return of the tractor at some point. Jon returned the tractor, but the transmission had allegedly been damaged. Jon's understanding about his use of the tractor was that if it required repairs, he should

3

be responsible for paying those costs. The purported estimate to fix the transmission during Jon's use of the tractor amounted to $10,000.

In late 2003, the Kaetzels had property taken by the State in a condemnation action and wished to reinvest the proceeds of the condemnation for tax purposes. Jon approached Carl and inquired whether he might be interested in selling any of the real estate owned by the trusts, and Carl informed Jon that he would sell him the Home Place property for $150,000. The parties agreed that the sale of the Home Place would be subject to life estates such that Carl, Roberta and Timothy could "go on living like [they] always did." Id. at 19, 61, 95, 108, 110.

The Kaetzels accepted the offer, and Jon had his attorney prepare a warranty deed to accomplish the transfer. On February 20, 2004, Jon delivered the deed and mortgage to his parent's home for them to review. Carl stated that there were no problems with the deed.

On February 21, 2004, Carl and Roberta, as trustees, sold the property to the Kaetzels for $150,000 and executed a warranty deed conveying the property to them. Neither Carl nor Roberta recalled reading the deed prior to executing the document, and they did not consult with their other children or legal counsel before executing it. In actuality, the deed conveys the Home Place, the Schmitt Farm, the Byers Farm and the Heilman Farm to the Kaetzels from the trusts, and reserved a life estate in favor of Timothy for his residence and twelve feet surrounding the structure, which Jon had surveyed at the advice of his attorney.

4

Timothy was also required to pay taxes on the home, provide insurance on the residence in an amount "in the sole discretion of" the Kaetzels, and maintain the home "in a condition satisfactory to" them. Tr. p. 177-78. Jon did not inform Carl or Roberta that he had the boundaries of Timothy's life estate surveyed, or that Timothy's life estate was limited as described in the deed. The deed also grants Carl and Roberta a separate life estate only "for their residence and its appurtenances." Ex. F.

When the deed was signed, the Kaetzels wrote a check for $86,000 to Carl and Roberta. Payment was accepted, and the money was deposited in their personal checking account. Fourteen months following the sale of the property, Jon tendered the unpaid balance in the amount of $64,000 on April 1, 2005, which was the due date of the mortgage. Carl and Roberta also accepted that payment and deposited those funds into their personal checking account.

Carl and Roberta claimed that they sustained damages because they did not like the way that Jon started treating the family after he took possession of the property. Supposedly, Jon "quit speaking to" his parents. Tr. p. 113. When Carl stopped receiving rental checks from a tenant that resided on the Schmitt farm, he discovered the deed that he and Roberta had executed contained properties in addition to the Home Place. Jon informed Carl that, with regard to the Home Place, the life estate "only included the house, garage and the lawn on the west side of the driveway." Tr. p. 26. Jon also explained that the animals Carl owned would be required to stay in this particular area. At some point, Jon established various rules that he required to be followed

5

because Timothy had "clearly overstepped [his] bounds." Ex. M. In fact, Jon threatened to prevent Timothy from reaching his residence by way of the only access over which Timothy had no life estate interest. Tr. p. 168.

Jon dug up some of the flowers and tore up the yard, moved all of Carl's tools from the shop barn into the rain, and threatened to "get rid of" all of the animals that Carl owned. Jon stacked round bales of hay in a wall around Timothy's home, threatened to build fencing to prevent Carl from fishing in the pond, and contacted the police when he believed that Carl, Roberta, or Timothy "got out of line," such as for "cussing" at Jon for tearing up the lawn with a skid loader, and engaging in other "terroristic" activities that Carl could not recall. Tr. p. 35.

When Carl and Roberta discovered the discrepancy between what they had intended to convey and what the deed actually conveyed, they initially took no action because they wanted peace in the family. After the police had been called numerous times, and Jon had threatened to prevent access to the property and talked about getting "rid of" the pets, tr. p. 172-73, Carl attempted to have Jon agree to allow them to continue to use the Home Place in a manner that was consistent with their initial understanding. However, Jon refused to do so.

On September 18, 2006, the Plaintiffs filed a six-count complaint against the Kaetzels, alleging breach of trust (Count I), rescission of the deed (Count II), constructive fraud that related to the deed (Count III), the return of the tractor, (Count IV), repayment of monies that had been loaned (Count V), and trespass (Count VI).

On November 17, 2008, the Kaetzels filed a two count counterclaim that sought judgment against Timothy for the payment of delinquent property taxes and to extinguish his conditional life estate in the property. Following a bench trial, the trial court issued findings of fact, conclusions of law, and judgment, on November 13, 2009, finding that Jon had committed a breach of trust by purchasing trust property and that he was indebted to Carl and Roberta in the amount of $26,000. The trial court set aside the deed and issued judgment on Count V in the amount of the indebtedness.

Jon appealed the trial court's decision, and on June 30, 2010, we issued a memorandum decision, reversing the trial court's judgment that previously found the deed to be void and instructed the trial court to enter judgment in favor of the Kaetzels on the breach of trust claim. Kaetzel v. The Carl Kaetzel Trust, et. al., No. 74A01-1001-PL-30, slip op. at 11 (Ind. Ct. App. June 30, 2010). We also ordered the trial court on remand to "enter findings and conclusions on all remaining claims, if any," and to calculate the prejudgment interest from September 18, 2006, owed with regard to the loan that was alleged in Count V. Id. at 12-13.

We determined that the terms of the trust provided Jon with an option to purchase trust property, and because the terms of the trust specifically authorized the transaction, no breach of trust occurred. Id. at 9. We concluded that Jon was a bona fide purchaser because he purchased the property in good faith, for valuable consideration, and without notice of outstanding rights of others. Moreover, we found that there was "no other reason to invalidate the sale and purchase of the property." Id. at 11.

7

On December 27, 2011, the trial court issued amended findings of fact, conclusions of law, and judgment. It determined that because we held on appeal that Jon was a "bona fide purchaser" that insulates him from committing a breach of trust in a trustee-beneficiary relationship, our conclusions precluded the trial court from making any findings with respect to the rescission and constructive fraud claims set forth in Counts I, II, and III. Thus, judgment was issued in favor of the Kaetzels with regard to those common law claims.

As for Count IV, the claim that concerned the bailment of the tractor, the trial court made additional findings of fact and conclusions of law, and dismissed the claim because the tractor had been returned during the pendency of this matter. Although the tractor was alleged to have been damaged, it was determined that "Carl and Roberta did not allege any special damages related to the tractor and they cannot attempt to prove and/or recover alleged damages not alleged in the Complaint even though the evidence suggested the tractor was returned in a state of disrepair." Appellants' App. p. 24. Therefore, the trial court declared Count IV "moot" and it was dismissed. Id. at 26.

As to Count V, the trial court found that the Kaetzels owed Carl the sum of $26,000 plus prejudgment interest at the statutory rate of eight percent to be calculated from the date that the complaint was filed. Moreover, the trial court determined that post-judgment interest should be calculated at the statutory rate of eight percent starting from the date of the judgment, and that interest should not be compounded.

8

The trial court next determined that the life estate to the "residence and its appurtenances" reserved in the deed essentially was a nonexclusive license to use only the residence and "lands directly surrounding the house, as well as the roadway to the home and gardening areas," so long as they did not interfere with the Kaetzels' use of the property. Id. at 27. Finally, it was concluded that

> 7. [The Kaetzels] are granted judgment against Timothy . . . on their counterclaim in the sum of . . . $2,397.15 plus post-judgment interest at the statutory rate of eight percent to begin on the date of said Judgment and until such sum is paid and satisfied.

Appellants' App. p. 27. The plaintiffs now appeal, and the Kaetzels cross appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

When the trial court enters findings of fact and conclusions of law, we apply a two-tiered standard of review. City of South Bend v. Dollahan, 918 N.E.2d 343, 349 (Ind. Ct. App. 2009). First, we must determine whether the evidence supports the findings; and, second, whether the findings support the judgment. Id. We will not reweigh the evidence or assess the credibility of witnesses, but instead will consider only the evidence most favorable to the judgment. Id. A trial court's findings and conclusions will only be set aside if they are clearly erroneous—that is, if the record contains no facts or inferences to support them. Hardy v. Hardy, 910 N.E.2d 851, 856 (Ind. Ct. App. 2009). A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. Fraternal Order of Police, Evansville Lodge

9

No. 73 v. City of Evansville, 940 N.E.2d 314, 318 (Ind. Ct. App. 2010), <u>trans.</u> <u>denied</u>.

Finally, we will apply a de novo standard of review to conclusions of law. <u>Johnson v.</u> <u>Johnson</u>, 920 N.E.2d 253, 255-56 (Ind. 2010).

## II. The Plaintiffs' Claims

### A. Rescission of the Deed and Constructive Fraud

The plaintiffs argue that the trial court should have set aside the warranty deed. Specifically, the plaintiffs maintain that the trial court made improper findings that Jon was a bona fide purchaser and that the deed was not void.

In addressing this contention, we initially observe that the law of the case doctrine forbids the relitigation of issues that have been resolved by an appellate court. <u>Dutchmen</u> <u>Mfg., Inc. v. Reynolds</u>, 891 N.E.2d 1074, 1082-83 (Ind. Ct. App. 2008). More particularly, "all issues decided directly or by implication in a prior decision are binding in all further portions of the same case." <u>Id.</u>

In this case, the plaintiffs' request for rescission was based upon Carl and Roberta's breach of trust and fraud theories. Tr. p. 37, 114. They based the rescission claim upon the theory they were "unaware" of the terms and content of the warranty deed. <u>Id.</u> at 114-15. Also, in the appellee/cross-appellants' brief, the petition for rehearing, and the petition to transfer that was filed in the initial appeal, the plaintiffs specifically raised and consistently argued for relief pursuant to their rescission and constructive fraud theories.

10

We clearly decided, as a matter of law, that there was no "reason to invalidate the sale and purchase of the Property" and that the "Deed is not void." There is no other reasonable construction of our initial opinion. Thus, the holding is the law of the case and not subject to re-argument and re-litigation. Dutchmen Mfg., Inc., 891 N.E.2d at 1082-83. As a result, we reject the plaintiffs' requests to set aside the warranty deed at this juncture and affirm the trial court's judgment as to Counts I-III.

### B. Dismissal of Count IV—Damages to the Tractor

The plaintiffs next contend that the trial court erred in dismissing Count IV of the complaint, which related to the alleged damages to the tractor. The plaintiffs contend that the dismissal was improper because they did not and could not have discovered the damages until after it was returned.

The evidence in this case shows that Carl purchased the tractor to help farm and for his son to use on the farm. The arrangement was not a bailment because the tractor was not in Jon's exclusive possession. Rather, the evidence established that the tractor was meant for both of their uses. See Norris Auto. Serv. v. Melton, 526 N.E.2d 1023, 1025 (Ind. Ct. App. 1988) (observing that a bailment is created when the bailor delivers his personal property into the exclusive possession of the bailee).

Also, even assuming that Carl had a valid legal claim and could seek damages, he failed to carry his burden in this regard. Damages must be proven with reasonable certainty. Noble Romans, Inc. v. Ward, 760 N.E.2d 1132, 1140 (Ind. Ct. App. 2002). Carl testified that his tractor would no longer operate in "low range." Tr. p. 38. But Carl

11

admitted that he drove the tractor home from Jon's and  allowed a neighbor, who was interested in buying the tractor, to test drive the tractor when it was claimed by the interested buyer that it would no longer operate in first gear.

Carl presented no evidence of the model year, the fair market value of the tractor, or an estimate from a mechanic to repair the tractor.  In short, Carl speculated that the repair costs might be "around $10,000," because Timothy had a similar, but smaller, tractor that cost around $7,000 to overhaul nearly ten years ago.  Id. at 39.

In our view, Carl's self-serving testimony and speculation about what the cost might be, failed to satisfy his burden of proof regarding the alleged damages to the tractor.  See Noble Romans, 760 N.E.2d at 1140 (holding that damages may not be awarded on the mere basis of conjecture or speculation); see also Marathon Oil Co. v. Collins, 744 N.E.2d 474, 482 (Ind. Ct. App. 2001) (observing that evidence of damages must be sufficient to allow the trier of fact to estimate the amount with a reasonable degree of certainty and exactness). For this additional reason, we conclude that the trial court properly entered judgment for the Kaetzels with regard to Count IV of the complaint.

### C.  Trespass

The plaintiffs argue that the trial court erred in concluding that the life estate reserved in the deed was only a limited, nonexclusive and conditional right to use some of the property at issue.  The plaintiffs argue that "the trial court's own finding that Jon and Beverly have exercised rights in derogation to Carl and Robert's life estate

12

unarguably constitutes a trespass . . . and that the dismissal of this count is "plain error." Appellants' Br. p. 22.

In Count VI of their Complaint, the Plaintiffs alleged that "Carl's and Robert's [sic] residence includes numerous barns, sheds and outbuildings, a garden and other appurtenances, which Jon has claimed as his property." Appellants' App. p. 34. Notwithstanding this allegation, the undisputed evidence at trial was that the parties agreed that Jon has not taken any action to infringe or intervene with Carl and Roberta's continued use of their life estate. Tr. p. 44-46, 115-16, 122-26, 180, 206. The trial court's findings of fact also demonstrate that the plaintiffs continue to use their property as they traditionally had. See Appellants' App. p. 20. Therefore, the trial court reasonably concluded that no trespass had occurred.

Indeed, the trial court, in its findings, recognized the established rule that an action for trespass to real estate cannot be maintained for an invasion of a right-of-way or an easement. State ex rel. Green v. Gibson Circuit Court, 246 Ind. 446, 449, 206 N.E.2d 135, 137 (1965). Here, the easement permits Jon to pass over areas of the life estate—the "mixed use area"—for purposes of farming activities, and permits Carl and Roberta to continue to use the appurtenant area as they have, provided they do not interfere with the farming operation. And it has been held that if an individual has a fair and reasonable belief that they have a right to be on the property of another, then that person is not guilty of trespass. Olsen v. State, 663 N.E.2d 1194, 1196 (Ind. Ct. App. 1996). For all of these

13

reasons, we affirm the trial court's judgment in favor of the Kaetzels with regard to the trespass count.

### III. Cross-Appeal—Ruling With Regard to the Kaetzels' Counter-Claim

Finally, we address the Kaetzels' cross-appeal, where they claim that the trial court failed to properly rule on their counterclaim as to the validity of Timothy's life estate in the property. The Kaetzels contend that because Timothy failed to pay the taxes and insurance as required by the terms of his life estate, his interest in the property was terminated by operation of law.

In addressing this issue, we agree with the Kaetzels' proposition that a conditional life estate terminates upon either the death of the grantee or upon the happening of the condition or contingency that limits the life estate. Sims v. Gay, 109 Ind. 501, 9 N.E. 120, 122 (1886). However, as the plaintiffs point out, no one was aware that the life estate retained for Timothy in the deed included only a few feet around his home, with no access or ability to use buildings appurtenant to his home, despite Jon's assurance to his parents that the deed included language permitting Carl, Roberta and Timothy to live on the Home Place as they "had always lived." Tr. p. 108. Indeed, only Jon was aware that a survey had been performed, and Timothy did not know that a deed had even been executed by his parents.

Timothy does not dispute that Jon, in fact, made a property tax and insurance payment on the life estate property after he failed to do so. Likewise, the plaintiffs are aware that due to the recordation of the deed, they are presumed to have constructive

14

notice of the contents of it, despite the fact that no one other than Jon and his legal counsel were aware of the contents of the deed when it was executed.

Although the Kaetzels maintain that the <u>Sims</u> case compels Timothy's ejectment from the property, we note that <u>Sims</u> does not even involve the disposition of a life estate. Rather, it was determined in that case that an estate in land granted to a surviving spouse is limited to the period of her widowhood, and our Supreme Court's holding was that remarriage terminates an estate which is limited in such a fashion.

In these circumstances, we cannot say that the minor violation of the condition of the life estate in this instance should result in the forfeiture of Timothy's interest. More specifically, our courts have repeatedly determined that "forfeitures are generally disfavored by the law," even where the remedy of forfeiture is specifically agreed upon and required by parties' contracts and default is clear. Rather, the law favors the award of damages proportionate to the damages actually resulting from the non-payment, non-performance, or non-enjoyment. <u>Skendzel v. Marshall</u>, 301 N.E.2d 641, 644 (Ind. 1973).

Indeed, we have previously considered the propriety of applying a forfeiture clause of a contract by considering the factors set forth in <u>Collins v. McKinney</u>, 871 N.E.2d 363 (Ind. Ct. App. 2007):

> (A) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (B) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

15

(C) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(D) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

(E) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

Ream v. Yankee Park Homeowner's Ass'n, 915 N.E.2d 536 (Ind. Ct. App. 2009).

In our view, the trial court properly granted judgment in Jon's favor for the taxes and insurance that he paid when Timothy failed to do so. Thus, Jon was adequately compensated for any loss that he suffered as a result of Timothy's failure to pay. On the other hand, invoking the remedy of forfeiture will result in an eviction of Timothy from his childhood home for the remainder of his life, which also effectively leaves Carl and Roberta without a caretaker. Instead, Carl and Roberta will be at the mercy of the Kaetzels.

Also, while the evidence shows that Jon has sued Timothy on two other occasions for ejectment and recoupment of these same taxes and insurance, he notably has not sued Timothy for any additional taxes and insurance. Thus, it is reasonable to assume that Timothy made these payments after being informed that he now has only a life estate over the residence and is obligated to make these payments. Finally, no evidence was presented reflecting that Timothy failed to comport with any standards of good faith and

16

fair dealing. Therefore, even if a nonexistent forfeiture clause could be implied in the deed—along with the right-of-way or easement—the trial court was correct in not ordering ejectment or forfeiture because of Timothy's failure to make these payments in a timely manner. Thus, the Kaetzels do not prevail on their counterclaim.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.