

**FILED**

Jul 13 2016, 9:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David J. Demers
Cooke Demers, LLC
New Albany, Ohio

ATTORNEY FOR APPELLEE

Christopher B. Gambill
Wagner, Crawford & Gambill
Terre Haute, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sony DADC US Inc. and Bradley J. Brown,[1] *Appellants-Defendants,* v. Mark Thompson, *Appellee-Plaintiff.* | July 13, 2016 Court of Appeals Case No. 84A01-1507-CT-892 Appeal from the Vigo Superior Court The Honorable Lakshmi Reddy, Judge Trial Court Cause No. 84D02-1209-CT-8121 |

**Kirsch, Judge.**

---

[1] We note that Brown does not file an appellate brief with this court to appeal the jury's verdict of liability. However, "[u]nder Indiana Appellate Rule 17(A), '[a] party of record in the trial court or Administrative Agency shall be a party on appeal.'" *Hoosier Outdoor Adver. Corp. v. RBL Mgmt., Inc.,* 844 N.E.2d 157, 162 (Ind. Ct. App. 2006) (quoting Ind. Appellate Rule 17(A)).

[1] This case originates from a complaint filed by Mark Thompson ("Thompson") alleging negligence and vicarious liability against Bradley J. Brown ("Brown") and his employer, Sony DADC US Inc. ("Sony"). Thompson worked as a security guard for Securitas, a private contractor, and provided building security for Sony at its Terre Haute, Indiana facility. While walking across the parking lot at Sony on March 23, 2012, Thompson was struck by a car driven by Brown, who had clocked out for the day, but had yet to leave the Sony property because he was planning to place personal items in the recycling area provided by Sony. In a pretrial order, the trial court found as a matter of law that Sony was vicariously liable for Thompson's injuries because Brown was within the scope of his employment at the time of the accident. Following a jury trial, Sony appeals the trial court's order, raising the following restated and consolidated issues for our review:

> I. Whether the trial court erred when it denied Sony's motion for summary judgment and granted Thompson's motion for partial summary judgment as to the issue of whether Brown was acting within the scope of his employment at the time of the accident; and
>
> II. Whether the trial court erred in allowing Thompson to present a claim for lost earning opportunity and in giving a jury instruction on lost earning capacity.

[2] We reverse and remand.

## Facts and Procedural History[2]

[3] Sony is a disc and digital solution provider for the entertainment, education, and information industries, offering optical media replication services, digital and physical supply chain solutions, and software services. *Appellant's App*. at 33. Sony's corporate network consists of service offices, optical media production, distribution, and digital facilities throughout the world. *Id*. Sony has a manufacturing facility located in Terre Haute, Indiana. Ken Walker ("Walker") was the Manager of Facilities at the Terre Haute facility until his retirement in 2011. During his time at Sony, Walker was one of the Sony employees who initiated a process that allowed Sony to become ISO 14001 certified. ISO is an acronym for the International Standards Organization, and ISO 14001 dealt with the development of environmental practices among the Sony employees. One advantage to becoming ISO certified was that Sony could sell and market its products as coming from an ISO compliant company.

[4] In the late 1990s, Sony elected to become ISO certified, and part of the certification process involved creating an employee recycling center and educating employees as to the importance of recycling. To further this endeavor, Sony established its employee recycling center in November 2007. Once ISO certified, Sony was subject to audits to confirm that the recycling

---

[2] We held oral argument on June 15, 2016 at Purdue University's Krannert School of Executive Management. We thank counsel for their preparation and argument, and we commend them on their outstanding advocacy. We also thank the students for their insightful questions and comments posed after, but not specifically related to, the oral argument.

center was still operational and that Sony remained compliant. Kelly Yochum ("Yochum") was an Environmental and Safety Engineer, who began working at Sony in 2007 and reported to Walker. Yochum agreed that ISO 14001 certification was an environmental compliance program, and participation in the program provided benefits to Sony because certain purchasers of products were only interested in buying ISO certified products. *Appellee's App*. at 25. Sony published a magazine called "The Insider," which was part of the communication component of the ISO certification initiative; this magazine, posters, and other publications were used to convey to Sony employees the importance of recycling. Numerous business journal articles supported the testimony by Walker and Yochum that ISO certification yielded great benefits to businesses that became certified.

[5] Brown was employed as an operator in the DVD packaging department at Sony. Brown stated that he became aware of Sony's recycling program when he was hired and that, during his orientation, Sony informed him of the recycling bins and their location. Brown was also aware of the ISO 14001 certification and that Sony sought to be compliant with the program.

[6] Securitas is a private contractor hired by Sony to provide building security. Thompson was hired by Securitas as a security guard and assigned to work at the Sony facility in Terre Haute. Thompson worked at Sony from January 2010 until March 23, 2012. Before working for Securitas, Thompson's career was in the graphic arts industry. He worked in various locations in and around Indiana, and most recently, prior to working for Securitas, he worked for a local

company in the graphic arts industry for fifteen years. Approximately two weeks before March 23, 2012, Thompson was offered a job in his area of training and experience with Galloway Photo, and at the time of the accident, he had given his two-week notice to Securitas and was to begin his new job on April 1, 2012.

[7] On March 23, 2012, Thompson was working in his position as a security officer at Sony. On the morning of March 23, it had rained, but was sunny and clear in the afternoon. From his office, later that afternoon, Thompson observed a car pull up to and park along a fence where cars were not permitted to park. He saw the driver get out of the car, lock the vehicle, and walk away. When the driver did not return, Thompson decided to walk out to the car to ask the driver to move the car. As Thompson walked from his office and across the parking lot along the fence and through the loading dock area, he was struck by a car driven by Brown. Thompson testified that he did not look around as he walked toward the parked car as he was focused on the car impermissibly parked along the fence. *Tr.* at 340-41. He further acknowledged that he did not have to walk through the loading dock area and could have taken a different route by walking through the plant to an exit door. *Id.* at 319-20.

[8] Brown had clocked out on March 23 at approximately 5:30 p.m. and walked out to his car in the parking lot. When he got to his car, he noticed that the windows were fogged up from the rain that had fallen earlier that day, so he turned on his defroster to clear the windows. However, his windows had not completely cleared when he started to drive away. As Brown started his car, he

intended to drive around the fence that Thomson was walking toward and make a U-turn to get to the recycling center to drop off his personal recyclables. While Brown was driving around the fence, his car struck Thompson. Brown testified that he did not see Thompson before he struck him. Brown acknowledged that the sole reason he was in the area where Thomson was struck was to come around the fence to go to the recycling center.

[9] Daniel Kirkman ("Kirkman") was employed at Sony as a temporary worker on March 23, 2012. He was driving into the parking lot to clock in for work when he observed the accident. He saw the car driven by Brown traveling south along the fence and attempting to make a U-turn at the end of the fence when Thompson was struck. Kirkman testified that, from his perspective, nothing precluded Thompson from seeing Brown's car, and likewise, nothing precluded Brown from seeing Thompson; Kirkman also stated that, from his perspective, there was nothing Thompson could have done to avoid the accident. *Tr.* at 170.

[10] As a result of the accident, Thompson sustained fractures around his knee cap that required surgery and a recovery period where he could not put any weight on his leg for about six or seven weeks. About four or five weeks after the accident, Thompson was able to return to work for Securitas using a wheelchair; at that time, Securitas no longer had a contract with Sony, so Thompson worked at Great Dane, where he worked until January 2013 when he had additional medical treatment related to the accident. Thompson later required knee replacement surgery, which was performed in September 2013,

and Thompson was released to return to work in December 2013. Because of Thompson's injuries sustained in the accident, he was unable to start his new job at Galloway Photo, and the position was offered to another person. Because of a pre-existing heart condition, Thompson retired on January 1, 2015.

[11] On September 17, 2012, Thompson filed a complaint against Brown and Sony alleging negligence against Brown and vicarious liability against Sony. Specifically, Thompson alleged that Brown was negligent in causing the accident that resulted in Thompson's injuries, and that, at the time of the accident, Brown was acting in the course and scope of his employment with Sony. On June 2, 2014, Thompson filed a motion for partial summary judgment, requesting the trial court to find, as a matter of law, that Sony was vicariously liable for Brown's conduct. Sony responded and filed its own motion for summary judgment. A hearing was held on the motions, and the trial court issued an order on September 4, 2014, granting Thompson's motion, finding as a matter of law that Brown was acting within the scope of his employment with Sony at the time the accident occurred and that, if a jury eventually found Brown to be at fault for causing the damages to Thompson, Sony would be vicariously liable for the damages. The trial court also denied Sony's motion for summary judgment. On May 21, 2015, Sony filed a motion

for reconsideration of the trial court's order,[3] which was subsequently denied. A jury trial was held beginning on June 24, 2015. Both Thompson and Sony submitted proposed final jury instructions to the trial court. On the issue of damages, the trial court instructed the jury on the definition of lost earning capacity, utilizing an instruction taken from comment number three of pattern instruction 703, "General Elements of Damages," from the Indiana Model Civil Jury Instruction. *Tr.* at 572-73.

[12] At the conclusion of the trial, the jury returned a verdict awarding damages to Thompson in the amount of $500,000, but found Thompson to be 50% at fault. Judgment was entered in favor of Thompson and against Brown and Sony in the amount of $225,149.[4] Sony now appeals.

# Discussion and Decision

## I. Summary Judgment

[13] When reviewing the grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.,* 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.,* 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied.* We stand in

---

[3] The Honorable Phillip Adler was the trial court judge at the time of the summary judgment order; however, he retired subsequently, and the Honorable Lakshmi Reddy became the new trial court judge.

[4] Prior to trial, Brown filed for Chapter 7 bankruptcy protection and was discharged of any final obligation owed to Thompson other than from his insurer. Before the commencement of trial, the parties entered into a "Covenant Not to Execute," wherein it was agreed that the limits of Brown's insurance, $25,000, would be set off from any jury verdict. *Appellant's App.* at 104.

the shoes of the trial court and apply a *de novo* standard of review. *Id.* (citing *Cox v. N. Ind. Pub. Serv. Co.,* 848 N.E.2d 690, 695 (Ind. Ct. App. 2006)). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Robson v. Tex. E. Corp.,* 833 N.E.2d 461, 466 (Ind. Ct. App. 2005), *trans. denied.* Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM,* 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id.* (citing *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*).

[14] A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Id.* Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. *Id.* We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

[15]     Sony argues that the trial court erred in granting Thompson's motion for partial summary judgment and holding as a matter of law that Brown was acting in the scope of his employment at the time of the accident and in denying Sony's own motion for summary judgment because Sony claims that Brown was not acting within the scope of his employment with Sony at the time of the accident. Specifically, Sony contends that, at the time of the accident, Brown had clocked out of work and was leaving for the day, but before leaving Sony's property, he planned to stop at the on-site recycling containers to deposit his personal recycling items. Sony asserts that the recycling containers were provided as a benefit to employees of Sony to use for the collection of their personal recyclables, and Brown was not in any way required to use them as part of his employment. Because Brown was on his own time and not in the service of Sony at the time the accident occurred, Sony urges that the trial court erred in finding that Brown was acting in the scope of his employment and that summary judgment should have been granted in Sony's favor, or alternatively, the issue of respondeat superior should have been decided by the jury.

[16]     Vicarious liability will be imposed upon an employer under the doctrine of respondeat superior when an employee has inflicted harm while acting within the scope of employment. *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 106-07 (Ind. Ct. App. 2014) (citing *Barnett v. Clark,* 889 N.E.2d 281, 283 (Ind. 2008)), *aff'd on reh'g, trans. denied*. "To fall within the scope of employment, 'the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business.'" *Id.* at 107. An act "is incidental to

authorized conduct when it 'is subordinate to or pertinent to an act which the servant is employed to perform,' or when it is done 'to an appreciable extent, to further his employer's business.'" *Bushong v. Williamson,* 790 N.E.2d 467, 473 (Ind. 2003) (quoting *Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450, 453 (Ind. 2000)) (internal citations omitted). "Acts done 'on the employee's own initiative, with no intention to perform it as part of or incident to the service for which he is employed' are not 'in the service of the employer' and are thus outside the scope of employment." *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 105 (Ind. 1997). "An employee's wrongful act may still fall within the scope of his employment if 'his purpose was, to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself' or if the employee's act 'originated in activities so closely associated with the employment relationship as to fall within its scope.'" *Id.* (quoting *Stropes by Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989)).

[17] Here, in its order granting partial summary judgment in favor of Thompson and denying Sony's motion for summary judgment, the trial court found as a matter of law that Brown was acting within the scope of his employment at the time of the accident when Thompson was injured. The order specifically provided:

> The Court finds that there is no genuine issue as to whether or not . . . Brown was in the scope of his employment with Sony . . . at the time of the accident in question. The Court specifically finds that he was in the scope of his employment at the time of the accident and the Court's decision is based primarily on the language that has been cited in the case of *Warner Trucking Inc. v.*

> *Carolina Casualty Insurance Company*, 686 N.E.2d 102 (1997), an
> Indiana Supreme Court case. This Court finds that . . . Brown, at
> the time of the accident in question, was to an appreciable extent
> furthering his employer's business, even though his conduct at
> the time was also motivated by his intention to benefit himself.
> The Court further finds that . . . Brown's activity at the time of
> the accident was closely associated with the employment
> relationship with Sony . . . to fall within the definition of "scope
> of employment."

*Appellant's App.* at 12-13.

[18]   The evidence designated by the parties showed that: Brown had clocked out prior to the time the accident occurred, *Appellee's App.* at 17; the only reason Brown was still on Sony property at the time of the accident was to deposit his personal recyclables at the recycling center, *id.*; Brown and his wife had begun recycling several years prior to the accident, and even if he did not utilize Sony's recycling center, he would have gone elsewhere to drop off his recyclables, *id.* at 19; and Brown was employed in the DVD packaging department at Sony, which had nothing to do with recycling or the recycling center. *Id.* at 12, 19. Additionally, designated evidence was introduced that: Sony's recycling center was created as a checklist item to become ISO 14001 certified, *id.* at 25, 33; another checklist item was an education program that informed Sony employees about the importance of recycling and of becoming ISO 14001 certified and encouraging them to use the recycling center, *id.* at 26; auditing occurred regularly to ensure Sony remained ISO compliant and to make sure the recycling center continued to operate and that the education of

employees continued, *id*. at 27, 33-34; Sony derived great benefit from being able to sell its products worldwide as being ISO certified, *id*. at 25, 32; and Brown acknowledged participating in the recycling education program at Sony and was attempting to use the recycling center at the time of the accident. *Id*. at 12, 16, 17.

[19] We find that, based on the evidence designated to the trial court, there are conflicting facts or conflicting inferences that can be drawn from the facts as to whether Brown was acting in the scope of his employment with Sony at the time of the accident. The evidence showed that, although Brown worked for Sony, and Sony provided the recycling center for its employees' personal use, his employment had nothing to do with recycling or the recycling center, and he was merely driving to deposit his personal recyclables at the time the accident occurred. Further, although creating the recycling center was an initiative to become ISO 14001 certified several years prior to the accident, which certification greatly benefited Sony, the use of the center by employees was not the focus of the initiative, merely the creation of the program. Additionally, there was evidence that the creation of the recycling program was a past initiative and was no longer discussed in the annual audits to ascertain continued ISO 14001 certification. *Appellee's App*. at 27. Based on the evidence, there are issues of material fact as to whether Brown's "'purpose was, to an appreciable extent, to further his employer's business,'" even though his actions were predominantly motivated by an intention to benefit himself; or whether his actions "'originated in activities so closely associated with [his] employment

relationship as to fall within its scope.'" *Warner Trucking*, 686 N.E.2d at 105 (quoting *Stropes by Taylor*, 547 N.E.2d at 247). We, therefore, conclude that the designated evidence presented genuine issues of material fact as to whether Brown was acting in the scope of his employment at the time of the accident with Thompson. The trial court erred in granting summary judgment in favor of Thompson on this issue, and we remand to the trial court for a new trial, where the issue of vicarious liability is presented to the jury.

## II. Jury Instruction

[20] Initially, Sony argues that the trial court abused its discretion in allowing Thompson to introduce at trial evidence of lost earning opportunity because it is not a theory of damages recognized in Indiana. Sony specifically points to the testimony of Charles Galloway ("Galloway"), in which he testified regarding Galloway's offer of a job for Thompson to work in his camera shop, the fact that the job would have paid more than Thompson's wages at Securitas, and Thompson's inability to take the job due to his injuries from the accident. *Tr.* at 385-89. However, Sony failed to make a contemporaneous objection when this evidence was introduced at trial. The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal. *Walnut Creek Nursery, Inc. v. Banske*, 26 N.E.3d 648, 654 (Ind. Ct. App. 2015). We, therefore, conclude that Sony has waived any challenge to the admission of this evidence.

[21] Sony next contends that the trial court abused its discretion when it instructed the jury on lost earning capacity as a theory of damages. The trial court has broad discretion regarding the manner by which it instructs the jury, and we generally review that discretion only for abuse. *McCowan v. State*, 27 N.E.3d 760, 763 (Ind. 2015). In doing so, "we consider the instructions 'as a whole and in reference to each other' and do not reverse the trial court 'for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law in the case.'" *Helsley v. State,* 809 N.E.2d 292, 303 (Ind. 2004) (quoting *Carter v. State,* 766 N.E.2d 377, 382 (Ind. 2002)). In evaluating the propriety of a given instruction, we consider (1) whether the instruction correctly states the law, (2) whether there is evidence in the record supporting the instruction, and (3) whether the substance of the instruction is covered by other instructions. *Hill v. Rhinehart*, 45 N.E.3d 427, 439 (Ind. Ct. App. 2015), *trans. denied*. An erroneous instruction warrants reversal only if it could have formed the basis for the jury's verdict. *Id.*

[22] Sony asserts that, although the impairment of earning capacity is a proper element of damages, the trial court erred in giving an instruction on the subject of lost earning capacity because it was not supported by the evidence. Sony contends that Thompson presented no evidence that he lost the capacity to earn going forward after the accident. Sony contends that the evidence presented showed that Thompson suffered no injuries in the accident that prevented him from working in the fields of security, photography, or printing. Sony asserts that it objected to a jury instruction on lost earning capacity due to the lack of

evidence to support such an instruction, but the trial court gave the instruction over the objection and erred in allowing the jury to consider lost earning capacity damages in its verdict.

[23] "Indiana recognizes that a proper element of damage is the impairment of earning capacity which means the impairment of ability to engage in one's vocation as distinguished from loss of earnings." *Scott v. Nabours*, 156 Ind. App. 317, 320, 296 N.E.2d 438, 441 (1973). To prove impaired earning capacity, one must show more than mere proof of permanent injury and pain; there must be evidence of probative value which relates the injury to an inability to engage in one's vocation. 156 Ind. App. at 320-21, 296 N.E.2d at 441. As with other damage issues, loss of earning capacity may be proven by both expert and non-expert testimony. 156 Ind. App. at 321, 296 N.E.2d at 441. "The gist of the concept is the adverse effect on vocation[, and t]he basic measure of damages for impairment of lost earning capacity is the difference between the amount which the plaintiff was capable of earning before the injury and the amount which he is capable of earning thereafter." *Id.* If no evidence is presented to establish the loss of earning capacity, there can be no recovery on that issue. *Id.*

[24] We initially note that, although we are remanding to the trial court for a new trial, and it is possible that, in the new trial, the same evidence may not be presented, we will still determine this issue in the event that the same issue arises in the new trial. In our review of the record, we do not find any evidence supporting giving an instruction on lost earning capacity. Lost earning capacity is shown by evidence of an inability to engage in one's vocation. *Id.*

Thompson concedes that Galloway's testimony established that "[t]he wages lost by Thompson during the period he would have been able to work for Galloway and up to the time he was released by his doctor were lost wages not lost earning capacity." *Appellee's Br.* at 21. Thompson does not point to any other evidence presented at trial that would support the giving of a jury instruction on lost earning capacity. Thompson's treating physician testified that Thompson was released to return to work without restrictions on December 16, 2013 and confirmed that, after being released to return to work, there was nothing "that would prevent [Thompson] from continuing on with . . . being a security officer with the treatment [the doctor] provided." *Tr.* at 450, 456. Thompson himself testified that nothing attributable to the accident prevented him from working in the printing industry. *Id.* at 285. We, therefore, conclude that, based on the evidence presented at trial, no evidence was presented to support giving a jury instruction on lost earning capacity, and the trial court abused its discretion in giving an instruction on lost earning capacity. However, as we are remanding for a new trial, new evidence could be presented that would support the giving of such an instruction in the new trial.

[25] Reversed and remanded.

[26] Riley, J., and Pyle, J., concur.