In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 18-2583 & 18-3487

KARMA INTERNATIONAL, LLC,

*Plaintiff-Appellant*,

*v.*

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

*Defendant-Appellee*.

_____

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-02182 — **William T. Lawrence**, *Judge*.

_____

ARGUED APRIL 12, 2019 — DECIDED SEPTEMBER 18, 2019

_____

Before FLAUM, EASTERBROOK, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. The Indianapolis 500 race has been a
fixture of American life since 1911, interrupted only by
world war. So when its 100th running arrived in 2016,
organizers wanted to shift the race-weekend entertainment
into high gear. They engaged Karma International, LLC, an
event-planning company, to host a ticketed party.

Unlike the Indianapolis 500 itself—which sold out for the first time in history—the Karma party was a disappointment. Poor ticket sales prevented Karma from covering its expenses. Karma sued the racetrack for breach of contract, accusing it of failing to adequately promote the party. The racetrack counterclaimed, alleging that Karma ignored its own advertising obligations. The district judge rejected Karma's claim at summary judgment, ruling that the damages theory rested on speculation. A jury found Karma liable on the counterclaim, awarding $75,000 in damages. Karma appeals, seeking review of the summary-judgment ruling and the denial of its posttrial motions for judgment as a matter of law or a new trial.

We affirm. Karma's evidence of damages is indeed speculative, so its claim fails under Indiana law. And we see no reason to second-guess the jury's determination that Karma breached the parties' contract by failing to fulfill its promises to advertise the event online.

## I. Background

The Indianapolis Motor Speedway, LLC, sponsors the annual Indianapolis 500 race and associated race-weekend events, which include musical acts and other festivities. In 2015 Karma International became a licensee of Maxim, a men's magazine. Karma has hosted Maxim-branded entertainment at large sporting events, including a party prior to the 2016 Super Bowl in San Francisco.

In early 2016 Karma began negotiations with the Speedway to host a Maxim-branded event at that year's 100th-running of the race. The parties eventually agreed on terms memorialized in a March 2016 agreement. The Speedway

promised to provide "marketing support via [its] social channels and … dedicated e-mail to [its] database." In return Karma pledged to promote race-weekend activities with a "banner ad on Maxim.com (minimum 1 million impressions)." It also promised to provide "marketing support via Maxim social channels for [the Indy 500] [m]usic events (Carb Day, Legend's Day and Indy 500 Snake Pit)."

To fulfill its advertising obligations under the contract, the Speedway sent four promotional e-mails in May 2016 promoting the Maxim party:

- May 9: A dedicated e-mail to 334 sponsors and suite ticketholders

- May 20: A dedicated e-mail to 13,824 fans

- May 21: A cross-promotional e-mail to 89,979 fans

- May 25: A dedicated e-mail to 149,430 "Wing and Wheel Newsletter" subscribers

Karma, for its part, never ran the promised banner advertisement on Maxim.com. Nor did it use Maxim's social-media channels to promote race-weekend events.

The Maxim party took place as scheduled on May 27. Karma spent $635,855.71 on the event but generated only $215,690.39 in revenue. While 1,787 guests attended the party, Karma sold just 92 full-price tickets. Some of the remaining guests bought reduced-price tickets, but most received complimentary admission.

In August 2016 Karma sued the Speedway for breach of contract, alleging that it failed to promote the Maxim party as agreed under the terms of the contract. Karma sought $817,500 in damages, a figure apparently gleaned from

conversations with Speedway officials who speculated that the party would generate $1 million in gross revenue "from ticket and table sales only."[1] The Speedway filed a counterclaim alleging that Karma failed to place the promised banner advertisement on Maxim's website or provide marketing support on Maxim's social-media channels.

The Speedway moved for summary judgment on Karma's claim. The judge discerned a factual dispute regarding the alleged breach of contract. While the Speedway insisted it hadn't promised to e-mail its *entire* database to promote the party, the evidentiary record—construed in Karma's favor—permitted an inference that it had. But Karma's damages theory was entirely speculative. Karma claimed that Speedway officials gave assurances that its e-mails would generate the sale of at least 1,500 tickets. The judge held that those comments, without more, could not establish how many additional ticket sales an e-mail to its entire database would have generated. Because Karma had no nonspeculative evidence of damages, the judge entered summary judgment for the Speedway.

The counterclaim proceeded to trial, and Speedway employees testified that no banner advertisement appeared on Maxim.com and that Karma failed to provide the promised marketing support on Maxim's social-media channels. Karma's CEO Dylan Marer admitted that he didn't know

---

[1] Long after the deadline to amend the pleadings expired, Karma moved to add allegations of additional contract terms not in the written agreement. A magistrate judge denied the motion, and Karma never objected to that ruling in the district court. On appeal Karma faults the district judge for not sua sponte conforming the pleadings to later-introduced evidence. The judge had no obligation to do so.

whether these marketing efforts had occurred. Jonathan Faber, a damages expert, estimated that the Speedway's lost-value damages for the nonexistent Maxim.com ad were approximately $15,000–$75,000. And he pegged the lost-value damages for the nonexistent social-media promotion at $90,000–$105,000.

The jury found Karma liable and awarded $75,000 in damages. Karma moved for judgment as a matter of law, and alternatively for a new trial, under Rule 50 of the Federal Rules of Civil Procedure. The judge denied both motions and entered judgment on the jury's verdict.

## II. Discussion

Karma challenges the judge's summary-judgment ruling and the denial of its posttrial motions. "We review a summary judgment de novo, asking whether the movant has shown that there is no genuine dispute as to any material fact." *Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1102 (7th Cir. 2019) (quotation marks omitted). Summary judgment is appropriate if Karma "failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"We review the denial of a Rule 50 motion for judgment as a matter of law de novo" and "consider whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Martin v. Milwaukee County*, 904 F.3d 544, 550 (7th Cir. 2018) (quotation marks omitted). "Judgment as a matter of law is proper 'if a rea-

sonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015) (quoting FED. R. CIV. P. 50(a)(1)). Finally, we review the denial of a motion for a new trial for abuse of discretion. *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011). "A verdict will be set aside as contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuleja*, 546 F.3d 423, 427 (7th Cir. 2008).

Indiana law governs the dueling contract claims in this diversity suit. In Indiana "the essential elements of a contractual action" are "(1) a valid and binding contract; (2) performance by the complaining party; (3) non-performance or defective performance by the defendant; and (4) damages arising from defendant's breach." *U.S. Research Consultants, Inc. v. County of Lake*, 89 N.E.3d 1076, 1086 (Ind. Ct. App. 2017) (quotation marks omitted). No one disputes that the parties had a valid contract.

The judge concluded at summary judgment that Karma offered only speculative evidence of its damages, an essential element of the claim. Under Indiana law "a factfinder may not award damages on the mere basis of conjecture or speculation." *Noble Roman's, Inc. v. Ward*, 760 N.E.2d 1132, 1140 (Ind. Ct. App. 2002). "Although mathematical certainty is not required, the amount awarded must be supported by evidence in the record." *Country Contractors, Inc. v. A Westside Storage of Indianapolis, Inc.*, 4 N.E.3d 677, 694 (Ind. Ct. App. 2014). Moreover, any "damages claimed for a breach of contract must be the natural, foreseeable, and proximate consequence of the breach." *Masonic Temple Ass'n*

*of Crawfordsville v. Ind. Farmers Mut. Ins. Co.*, 837 N.E.2d 1032, 1037 (Ind. Ct. App. 2005).

Karma's damages theory rested on its contention that Speedway officials guaranteed sales of at least 1,500 tickets, a promise somehow premised on their characterization of the Speedway's e-mail database. Because the Speedway didn't e-mail its entire database, the theory goes, the Maxim party attracted far fewer than 1,500 paying customers.

To begin, the evidence of a 1,500-ticket guarantee is quite sparse. It consists of Karma CEO Marer's deposition testimony that Speedway employees Kyle and Jarrod Krisiloff "asked me how many [tickets] I would need to—to sell to make this worthwhile, and I said a minimum of 1,500, and they said, 'No problem. We sell all of our events out. We'll sell it out, no problem, with our database.'"

This testimony perhaps sheds light on the parties' expectations, and if Karma had proof of damages, it might be relevant to the question of foreseeability. But it is not evidence of harm caused by the alleged breach—namely, the Speedway's decision to promote the event through certain subsets of its e-mail database rather than the whole thing. Karma offered no expert testimony or other evidence of harm proximately caused by the allegedly insufficient e-mail promotion. Three words of Marer's deposition testimony— "with our database"—provide the only link between the alleged breach and the alleged harm.

We cannot attribute low ticket sales to the Speedway's alleged promotional breach merely because its employees predicted success. Karma blames the party's disappointing performance on the Speedway's e-mail strategy, but that

claim doesn't rise above the level of speculation. Karma has no evidence indicating that the Speedway's promotional choices were the sole or even primary driver of the lackluster ticket sales. And the sheer number of alternative explanations fatally undermines that assumption. Indiana law doesn't require mathematical certainty, but it does require more than bare assertions. *See Noble Roman's*, 760 N.E.2d at 1140 (explaining that proof of contract damages requires more than "mere … conjecture").

At bottom, Karma is making a reliance argument: because it expected the Speedway's advertising efforts to generate 1,500 ticket sales and relied on that expectation, the Speedway should be forced to cover the shortfall. That sounds like promissory estoppel, not breach of contract. But in Indiana the existence of an "express contract" precludes recovery under a "theory implied in law." *Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992); *see also Fiederlein v. Boutselis*, 952 N.E.2d 847, 857 (Ind. Ct. App. 2011) (explaining that promissory estoppel "permit[s] recovery where *no express contract … exists*") (emphasis added). Here, the existence of an express contract is undisputed.

Karma also relies on a strained analogy to the Maxim-branded Super Bowl party, which brought in over $1 million. But the fact that the Indy 500 party generated less revenue than its Super Bowl counterpart tells us nothing about the harm caused by the Speedway's alleged breach. Without more information about how the Super Bowl party was promoted, we have no relevant point of comparison.

Even when viewed in the light most favorable to Karma, this record at best contains only speculative evidence of

damages. The judge was right to grant summary judgment in favor of the Speedway on Karma's claim.

Turning now to the posttrial motions on the counterclaim, Karma argues that no reasonable jury could conclude that Speedway officials actually anticipated that the racetrack would suffer damages if Karma failed to deliver on the promised online advertising. The judge thought this argument rested on a fundamental misunderstanding of contract law, and we agree. Indiana courts follow the familiar hornbook rule that damages may not exceed the harm foreseeable to the parties at the time of drafting. *See Hadley v. Baxendale* (1854) 156 Eng. Rep. 145, 147–48; 9 Exch. 341. Put differently, a "promisor is not required to compensate the injured party for injuries which, when the contract was made, the promisor had no reason to believe would be a probable result of the breach." *Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 614 (Ind. Ct. App. 2000).

Karma doesn't argue that the Speedway's damages were objectively unforeseeable. It instead argues that Indiana's version of the *Hadley* rule requires at least one fact witness to testify that he subjectively anticipated a precise sum of damages at the time of drafting. That's wrong on two fronts. First, expert testimony is an accepted method for proving contract damages. *See Sony DADC U.S. Inc. v. Thompson*, 56 N.E.3d 1171, 1181 (Ind. Ct. App. 2016). Second, Karma mistakenly objects to a lack of subjective evidence when "the test is an objective one." *Rogier*, 734 N.E.2d at 614. A plaintiff in a breach-of-contract suit doesn't have to prove his state of mind during contract negotiations to receive damages. He is "entitled to present evidence of the breach and resulting damages and have the trier of fact determine what was

reasonably foreseeable at the time of contracting." *WESCO Distrib., Inc. v. ArcelorMittal Ind. Harbor LLC*, 23 N.E.3d 682, 710 (Ind. Ct. App. 2014).

The upshot is that the jury could award objectively foreseeable damages. Contrary to Karma's argument, it didn't need to hear testimony on the subjective expectations of Speedway officials before awarding damages. The judge properly denied Karma's motion for judgment as a matter of law.

Finally, we see no abuse of discretion in the judge's ruling on Karma's motion for a new trial. The jury had plenty of evidence that the Speedway complied with its promise to send a "dedicated email" to its database. Jarrod Krisiloff testified that the database "is a collection of personal records" and "is used for marketing efforts but is never solely used in its entirety for any one specific cause." He explained that the Speedway targets its promotional messages strategically rather than sending every message to every subscriber. And he testified that sending a dedicated promotional e-mail to the entire "Wing and Wheel Newsletter" subscriber list would have been an unprecedented step for the company. Ryan Hollander, manager of direct marketing for the racetrack, testified that the Wing and Wheel Newsletter was the "largest, most broadest reaching email … of the database."

As the judge observed in denying the motion for a new trial, "database" is a vague term, but the trial testimony supplied the jury with additional context. A rational jury could conclude that the Speedway complied with its contractual obligations by sending dedicated messages to multiple subsets of its larger database.

The record also contains sufficient evidence of Karma's breach. Hollander and the Krisiloff brothers testified that Karma never ran the banner advertisement on Maxim.com and failed to provide social-media support for the Indy 500's live music events. Even Karma's CEO admitted that he didn't know whether this was done. Karma maintains that it complied with the agreement by introducing Speedway employees to personnel at Maxim who could assist in preparing the promised promotional material. But Karma agreed to deliver the advertisements, not to serve as a conduit between the Speedway and Maxim. What's more, at trial the Speedway rebutted Karma's version of events. When asked whether he was "ever introduced by Karma to anyone at Maxim for social media channel postings," Kyle Krisiloff said, "No." And Jared Krisiloff couldn't recall any introduction "for the purpose of this deliverable." In short, the jury's liability verdict was adequately supported by trial testimony.

Finally, Karma argues that it deserves either a new trial or a remittitur because no Speedway official testified that he actually anticipated damages stemming from the breach. We've already addressed that argument's legal shortcomings. In any event, the jury's damages award had sufficient evidentiary support. Expert testimony valued the loss from Karma's failure to deliver the promised advertising at between $115,500 and $198,000. The jury awarded less— $75,000—and Karma hasn't made a persuasive case for retrial or remittitur.

AFFIRMED